Opinion issued August 18, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-01105-CV

————————————

## JEFFREY MAHONEY, KRISTIN MAHONEY, AND HECTOR BORGES, Appellants

## V.

## WEBBER, LLC, Appellee

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 16-DCV-236228**

---

# O P I N I O N

Appellants, Jeffrey Mahoney, Kristin Mahoney, and Hector Borges (collectively, the "homeowners"), challenge the trial court's rendition of summary judgment in favor of appellee, Webber, LLC ("Webber"), in their suit against it for

private nuisance and a permanent injunction. In two issues, the homeowners contend that the trial court erred in granting summary judgment on their claims.

We affirm.

## Background

In their first amended petition, the homeowners alleged that they own homes in a subdivision in Fort Bend County, Texas (the "County"). In January 2016, Webber was awarded a contract for the Westpark Tollway extension project. In February 2016, Webber's contract was approved by the County's Commissioners' Court and signed. Webber began work on the Westpark Tollway extension project and erected a concrete batch plant on property neighboring the homeowners' subdivision. Webber used that property as a temporary center of operations during its construction of the Westpark Tollway extension project. The homeowners' homes were the two closest homes to Webber's concrete batch plant. The homeowners alleged that after the Westpark Tollway extension project began they experienced substantial interference with the use and enjoyment of their homes, including an unreasonable level of noise from the concrete batch plant and construction traffic, an unreasonable amount of dust from the property, an unreasonable amount of light pollution from the concrete batch plant and construction traffic, an unsightly view created by Webber, and an invasion of the homeowners' privacy.

2

The homeowners sued Webber for private nuisance, claiming that Webber's conduct caused them a loss of fair market rental value, past and future physical pain and suffering, and past and future mental anguish, including loss of enjoyment. The homeowners also sought a permanent injunction to restrict Webber's hours of operation; institute dust reduction, noise control, and light reduction measures; and regulate Webber's use of construction vehicles to abate invasion of privacy issues.

Webber answered, generally denying the homeowners' allegations and asserting that it was entitled to statutory immunity from liability under Texas Civil Practice and Remedies Code section 97.002.

Webber moved for summary judgment, arguing that as a contractor constructing a road "for" the Texas Department of Transportation ("TxDOT"), it was entitled to statutory immunity from liability as a matter of law under Texas Civil Practice and Remedies Code 97.002.[1] In its motion, Webber asserted that the homeowners' suit arose from construction on the Westpark Tollway extension project by the County and TxDOT because connectivity to the northwest portion of the County had become a problem. Before the Westpark Tollway extension project began in 2016, FM 1093—a farm-to-market road that is part of the state highway system—was a rural, two-lane road. With the explosion in the County's population,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 ("Limit on Liability of Certain Highway, Road, and Street Contractors").

3

FM 1093 became heavily congested with traffic. TxDOT standards required that FM 1093 be upgraded to a four-lane divided roadway. The plan, as shown in an appendix to TxDOT's environmental assessment of the project, a copy of which Webber attached as an exhibit to its summary-judgment motion, included replacing a portion of FM 1093 with an extension of the Westpark Tollway, to be operated by the County, and contiguous non-toll frontage roads, to be owned and maintained by the State of Texas. TxDOT provided the County with $40 million in financing for the Westpark Tollway extension project.

In January 2016, the County awarded Webber the contract to construct the Westpark Tollway extension and frontage roads. For the project, Webber leased a tract of land adjacent to FM 1093. The property was already being used as a commercial sand pit. Webber leased the property to use as its operations hub, and it erected and operated a temporary concrete batch plant on the property. Webber began producing concrete at the plant in April 2016.

Because Webber was a contractor hired to construct highways and roads on behalf of the County and TxDOT, it asserted it was entitled to statutory immunity from liability under Texas Civil Practice and Remedies Code 97.002.

In response to Webber's summary-judgment motion, the homeowners argued that Texas Civil Practice and Remedies Code section 97.002 did not apply to Webber because its contract was with the County, not TxDOT.

4

Webber replied that the statute's plain language did not require Webber to have a direct contractual relationship with TxDOT, only that it be performing road work for TxDOT. And its contract with the County came about because of "the County's partnership with TxDOT whereby TxDOT agreed to finance $40 million" for the Westpark Tollway extension project.

After a hearing, the trial court granted Webber summary judgment on the homeowners' claims.[2]

## Statutory Immunity from Liability

In their first issue, the homeowners argue that the trial court erred in granting Webber summary judgment on their claims because Texas Civil Practice and Remedies Code section 97.002 does not grant statutory immunity from liability to a contractor who is not providing services under a TxDOT contract.

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without

---

[2] In March 2019, Webber completed its work on the Westpark Tollway extension project, closed the concrete batch plant, and ceased operations on its property near the subdivision.

specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a matter-of-law summary-judgment motion, the movant must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

The homeowners argue that Texas Civil Practice and Remedies Code section 97.002, which provides statutory immunity from liability for contractors that construct or repair highways, roads, or streets for TxDOT, does not apply to Webber because it provided services under a contract with the County and not with TxDOT. Section 97.002 provides:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with the contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

Webber's contract was with the County, but the contract required Webber to construct part of a state highway. We therefore must consider whether the Legislature intended that the immunity from liability provided by Texas Civil Practice and Remedies Code section 97.002 extend only to contractors who contracted with TxDOT to construct or repair roads or whether it also intended to confer immunity on firms that have contracted with other governmental entities to construct or repair state-owned highways, roads, or streets.

We review issues of statutory construction de novo. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). "In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole." *Id*. "The

7

statutory terms bear their common, ordinary meaning unless the text provides a different meaning or the common meaning leads to an absurd result." *Id.* A court "may not impose its own judicial meaning on a statute by adding words not contained in the statute's language." *Id.*

Section 97.002 refers to "a contractor," but it does not define "contractor" as a construction firm that has contracted with TxDOT, nor does it otherwise require the firm to have privity with TxDOT. We read the plain language of section 97.002 as requiring only that the firm perform work under a contract that makes the firm responsible for constructing or repairing a highway, road, or street for TxDOT.

The Texas Transportation Code provision that addresses the Westpark Tollway extension project supports this interpretation, expecting that construction firms that contract with the County to work on the project will perform construction for TxDOT. *See* TEX. TRANSP. CODE ANN. § 228.011. Under that statute, while the County has the primary responsibility for the financing, construction, and operation of the project, TxDOT, "consistent with federal law," must "assist the [C]ounty" in achieving these objectives "by allowing the [C]ounty to use state highway right-of-ways owned by the department and to access the state highway system." *See* TEX. TRANSP. CODE ANN. § 228.011(b), (b-1). TxDOT "participate[d] in the cost of acquiring, constructing, maintaining or operating" the project. *See id.*

Because the right-of-way used in the Westpark Tollway extension project remained part of the state highway system, the County had to "comply with [TxDOT] design and construction standards" in building the frontage roads. *Id.* § 228.001(h). The Financial Assistance Agreement[3] between TxDOT and the County confirms that the frontage roads constructed in the project belong to the state highway system, acknowledging that after construction, "TxDOT shall be responsible for maintenance of the frontage roads of the project."

The Legislature knows how to draft statutes that limit liability for only those contractors that contract with TxDOT. *See, e.g.*, TEX. TRANSP. CODE ANN. § 473.003 (limiting civil liability for "[a] contractor who enters into a contract with a governmental entity" arising out of damage caused by defective project specifications). No such limitation appears in Texas Civil Practice and Remedies Code section 97.002. Because the undisputed facts show that Webber's contract with the County required it to construct a "highway, road, or street" for TxDOT, it is entitled to statutory immunity from liability under section 97.002 as a matter of law. Accordingly, we hold that the trial court did not err in granting Webber summary judgment.

We overrule the homeowners' first issue.

---

[3] Webber attached a copy of the Financial Assistance Agreement to its summary-judgment motion.

9

## Constitutional Claim

In their second issue, the homeowners argue that the trial court erred in granting Webber summary judgment on their claims because Texas Civil Practice and Remedies Code section 97.002 is unconstitutional as applied in this case. Because the homeowners waived their constitutional claim by failing to first raise it in the trial court, we do not reach this issue. *See* TEX. R. CIV. P. 166a(c); TEX. R. APP. P. 33.1(a).

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Kelly, Landau, and Countiss.